IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JANE DOE,** | |
| *Plaintiff*, | |
| v. | Civil No.: 1:23-cv-01184-JRR |
| **MERCY HIGH SCHOOL, INC.,** *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OPINION**

Pending before the court is Defendants Sisters of Mercy of the Americas, Inc., and Mercy Education System of the Americas, Inc.'s Motion to Dismiss Counts IX and X of the Second Amended Complaint. (ECF No. 62; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025).

I.  **BACKGROUND**[1]

As this court explained in its previous memorandum opinions, this action concerns Defendants' alleged failure to prevent and protect Plaintiff from repeated sexual abuse by Ernest Jackson, IV, an assistant indoor track coach with Mercy High School. (ECF No. 57 ¶ 2.) Plaintiff filed suit against Defendants Mercy High School, Inc., Board of Trustees of Mercy High School, Inc. ("BOT"), Mercy High School Asset Management, LLC ("MHSAM"), Sisters of Mercy of the America's, Inc. ("SOM"), Sisters of Mercy of the Americas South Central Community, Inc. ("SOM South Central"), and Mercy Education System of the Americas, Inc. ("MESA") in the Circuit Court for Baltimore City on or around April 10, 2023. (ECF No. 1-2 at p. 47.) On May 4, 2023, Defendants Mercy High School, BOT, MHSAM, with the consent of Defendants SOM,

---

[1] For purposes of resolving the pending motions, the court accepts as true all well-pled facts set forth in the Second Amended Complaint. (ECF No. 57.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

SOM South Central, and MESA, removed the action to this court. (ECF Nos. 1, 1-1.) All Defendants moved to dismiss the complaint. (ECF Nos. 15, 16.) Plaintiff then sought leave to amend the complaint, which this court granted. (ECF Nos. 19, 32.) On August 22, 2023, the amended complaint was docketed. (ECF No. 33.) All Defendants again moved to dismiss. (ECF Nos. 34, 35.) Relevant here, SOM and MESA argued that Plaintiff's claims of negligence and breach of fiduciary duty (as against them) failed. The court concluded that, while Plaintiff had pled sufficient facts to support a plausible inference that SOM and MESA owed Plaintiff a legally cognizable duty, she had failed to allege a plausible breach of that duty; instead, the breach of duty allegations were premised on a legal relationship unfounded or unsupported by the facts alleged. (ECF No. 42 at pp. 37–53.) The court granted SOM and MESA's motion and dismissed the action as against them. (ECF No. 43.)

Plaintiff subsequently moved to vacate the court's order of dismissal to permit her to file a second amended complaint, which SOM and MESA opposed. (ECF Nos. 47, 48, 51.) Of particular import here, the proposed amendment made efforts to "cure her pleading deficiencies" identified by the court in ruling on the motion to dismiss by "adding two standalone counts against [SOM and MESA]"—general negligence and breach of fiduciary duty—with "detailed factual support" for each claim, neither of which "require[s] an alleged employment relationship." (ECF No. 48 ¶ 8; ECF No. 48-1 at p. 4.) The new "standalone" counts rely upon mostly the original factual allegations but advance additional legal theories directed at SOM and MESA's alleged breaches of duties owed to Plaintiff. The court granted Plaintiff's motion to amend, and Plaintiff's Second Amended Complaint, now the operative complaint, was docketed. (ECF No. 57; the "SAC.") The remaining Defendants in this action are Mercy High School, BOT, MHSAM, SOM, and MESA. *Id.*

In her SAC, Plaintiff asserts the following claims:

> **Count I**: Negligent Hiring against Defendants Mercy High School and BOT;
>
> **Count II**: Negligent Supervision, Retention, and Training against Defendants Mercy High School and BOT;
>
> **Count III**: Gross Negligence against Defendants Mercy High School and BOT;
>
> **Count IV**: Breach of Fiduciary Duty against Defendants Mercy High School and BOT;
>
> **Count V**: Violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.* against Defendants Mercy High School and BOT;
>
> **Count VI**: Retaliation in Violation of Title IX against Defendant Mercy High School;
>
> **Count VII**: Fraudulent Conveyance against Defendants Mercy High School, BOT, and MHSAM;
>
> **Count VIII**: Negligence against Defendants Mercy High School and BOT;
>
> **Count IX**: Negligence against Defendants SOM and MESA; and
>
> **Count X**: Breach of Fiduciary Duty against Defendants SOM and MESA.

(ECF No. 57.)

The court incorporates the extensive background set forth in its memorandum opinion at ECF No. 42 and provides herein a brief overview of pertinent facts. In 2016, Jane Doe, a 14-year-old girl who had recently immigrated to the United States from Honduras, began her freshman year at Mercy High School. (ECF No. 57 ¶ 1.) Mercy High School is an all-girls, private Catholic college preparatory school in Baltimore, Maryland. *Id.* ¶ 9. The BOT is the "governing body" responsible for establishing Mercy High School's policies and "is supervised by and under the

control of" SOM and MESA. *Id.* ¶¶ 11, 170. SOM formed MESA in 2017 and "delegated to it the authority and responsibility to oversee their sponsored schools," including Mercy High School. *Id.* ¶ 14.

At all times relevant, SOM has "sponsored" Mercy High School as a Catholic educational institution in accordance with a contract Plaintiff "believe[s] to be the Covenant." *Id.* ¶¶ 17, 19. The Covenant sets forth the contractual rights and obligations of SOM and Mercy High School with respect to the "sponsorship" relationship. *Id.* ¶¶ 19, 21. Under the Covenant, Mercy High School agrees to participate in MESA, "to grant SOM, and SOM through MESA, reserved governance powers and control over" its BOT, and to obtain MESA's consent before the BOT "is authorized to take its most critical and basic functions." (ECF No. 57 ¶ 22.) The Covenant similarly requires MESA, acting on behalf of SOM, "to ensure that [the BOT] fulfills its fiduciary duties to set the direction of the school and establish its policies and programs" to educate the students of the school with a "Mercy Education." *Id.* ¶ 23. A "Mercy Education" incorporates the "Five Critical Concerns of SOM," including "[n]onviolence and preventing violation and abuse of women and children." *Id.* ¶¶ 24–26. Mercy High School's Student/Parent Handbook "adopts and follows the Archdiocese of Baltimore's *Statement of Policy for the Protection of Children and Youth*" (the "Archdiocese's Policy"). *Id.* ¶ 27. Pursuant to their contractual responsibility for Mercy High School policies, SOM and MESA are "aware" of and "sanction" the adoption of the Archdiocese's Policy. *Id.*

Plaintiff's SAC details Jackson's repeated sexual abuse of her during her freshman and junior years. *Id.* ¶¶ 58–65, 73, 87. Plaintiff alleges that Mercy High School hired Jackson solely on Director Nicholas Gill's recommendation (based on a family friendship) and "did not follow its own policy or Maryland law when it hired Jackson despite his ineligibility for employment."

4

(ECF No. 57 ¶¶ 38, 46.) Plaintiff further alleges that Mercy High School's response upon learning of Jackson's abuse of Plaintiff violated the Archdiocese's Policy and constituted retaliation against Plaintiff (*id.* ¶¶ 89, 90–94, 105–11, 117–136); Mercy High School's President "intentionally misrepresented to parents that Mercy High School's hiring process complies with all applicable laws and that all candidates for employment 'undergo a fingerprint criminal background check through the FBI's Criminal Justice Identification Services (CJIS) Division' that is updated automatically to apprise the school if employees are subsequently charged with crimes" (*id.* ¶¶ 114–16); and President Lennon's statements were dishonest and a violation of Mercy High School's duties (fiduciary and otherwise) to protect its students. *Id.* ¶ 116.

Following the filing of Plaintiff's SAC, Mercy High School, the BOT, and MHSAM filed their answer. (ECF No. 61.) SOM and MESA moved to dismiss. (ECF No. 62.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual

5

allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015).

## III.   ANALYSIS

SOM and MESA move to dismiss Plaintiff's claims against them because, they urge, Plaintiff does not plausible allege (1) a contractual relationship among SOM, MESA and Mercy High School, (2) that SOM and MESA owed a duty of care; or (3) the existence of the requisite fiduciary relationship.² (ECF No. 62-1 at pp. 5–14.) Plaintiff opposes the Motion, challenging

---

² SOM and MESA further asset as follows:

> Although SOM and MESA argue herein only a subset of the arguments raised in their prior briefings, to the extent the previously-stated arguments are applicable in any way to the newly-stated counts in the Second Amended Complaint, they incorporate and adopt by reference all arguments presented in both their Motion to Dismiss Counts I, II, IV, and VIII Against Them (ECF No. 34) and supporting reply brief (ECF No. 41). *See* Fed. R. Civ. P. 10(c).

(ECF No. 62-1 at p. 5 n.2) The court appreciates the general reason that SOM and MESA incorporate/adopt their previous briefing; however, the court has already ruled on those papers. To the extent SOM and MESA seek reconsideration of the court's previous opinion, or to reassert here arguments previously made, the burden is on the party seeking relief to advance argument. More simply, it is neither warranted nor proper for the court to review SOM and MESA's previous filings to see how, if at all, they support the Motion; and the court declines to do so.

the merits of SOM and MESA's arguments.³  (ECF No. 65 at p. 7–11.)

### A. Pleading a Contractual Relationship

SOM and MESA first argue that Plaintiff's SAC should be dismissed as against them because the "foundation for Plaintiff's claims" against SOM and MESA is based on "speculation and conjecture" because she does not attach to her SAC a signed Covenant between SOM and MESA and Mercy High School.⁴  (ECF No. 62-1 at pp. 5–6.)  This argument is not persuasive. Plaintiff alleges a contractual relationship in the form of the Covenant.  (ECF No. 57 ¶¶ 11, 19–26.)

Plaintiff's allegations discuss the parties' respective purported contractual obligations relevant to the instant action and how they relate to Plaintiff's claims at issue based on publicly available information related to SOM, MESA, and their sponsored schools.  She also attaches the Covenant template as an exhibit to the SAC.  (ECF No. 57 ¶ 21; ECF No. 4-1.)  SOM and MESA's challenge is an evidentiary one, not a pleading one.  It neglects Plaintiff's allegations related to a contractual relationship, which the court accepts as true on the Motion.  At this preliminary stage of litigation, Plaintiff's allegations are sufficient to plead a plausible contractual relationship

---

³ Plaintiff also contends that SOM and MESA's arguments are barred by the law of the case doctrine.  The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) (quoting *Pepper v. United States,* 562 U.S. 476, 506 (2011)).  It "'expresses the practice of courts generally to refuse to reopen what has been decided,' but it does not 'limit [courts'] power.'" *Id.* at 245 (quoting *Messenger v. Anderson,* 225 U.S. 436, 444 (1912)).  "The doctrine's effect is to bar a party from resurrecting issues that were previously decided or 'decided by necessary implication,'" thereby advancing the interest in "efficiency, judicial economy, and finality."  *Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, No. CV ELH-18-3918, 2020 WL 7054760, at *6 (D. Md. Dec. 2, 2020), *aff'd,* No. 20-2319, 2022 WL 12324609 (4th Cir. Oct. 21, 2022) (quoting *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008)) (citing cases).  The doctrine "is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation."  *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 68–69 (4th Cir. 1988) (quoting *White v. Murtha,* 377 F.2d 428, 431 (5th Cir. 1967)).  Ultimately, the court need not decide whether the doctrine is applicable here because the court declines to grant the Motion.

⁴ Plaintiff argues that SOM and MESA are estopped from advancing such an argument, because, she contends, it is contrary to their argument made in their prior motion to dismiss.  (ECF No. 65 at pp. 4–5.)  The court need not reach this question because, as set forth herein, the court finds that Plaintiff has plausibly and properly alleged a contractual relationship "between SOM and MESA and Mercy High School."

between/among SOM, MESA, Mercy High School, and the BOT.

### B. Negligence Claim against SOM and MESA[5]

The court refers to the law it already addressed at length in its previous memorandum opinion. "A plaintiff bringing a negligence claim must establish four elements: 'a duty owed to (or to a class of which [she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'" *Kiriakos v. Phillips*, 448 Md. 440, 456 (2016) (quoting *Jacques v. First Nat'l Bank of Md.,* 307 Md. 527, 531 (1986)). "Because '[t]here can be no negligence where there is no duty that is due[,]' an analysis as to negligence usually begins 'with the question of whether a legally cognizable duty exi[s]ts.'" *Kennedy Krieger Inst., Inc. v. Partlow*, 460 Md. 607, 633 (2018) (quoting *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 414 (2005)). A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Pharmacia & Upjohn Co.*, 388 Md. at 415 (quoting *Dehn v. Edgecombe*, 384 Md. 606, 619 (2005)). "[T]he determination of whether a duty exists represents a policy question of whether the plaintiff is entitled to protection from the defendant." *Id.* The "classic factors" that the court uses "to decide questions of duty under the common law" are:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost[,] and prevalence of insurance for the risk involved.

---

[5] "When considering a State law claim, the Court must apply the law of the forum state (including as to choice of law), whether proceeding under supplemental or diversity jurisdiction." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 418 n.17 (D. Md. 2022) (citing cases).

*Kiriakos*, 448 Md. at 486 (quoting *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 627 (1986)). "Importantly, '[i]n cases involving personal injury, the principal determinant of duty becomes foreseeability.'" *Kennedy Krieger Inst., Inc.*, 460 Md. at 634 (quoting *Pharmacia & Upjohn Co.*, 388 Md. at 416); *see Jacques*, 307 Md. at 534–35 ("In determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. . . . [W]here the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability." (citation omitted)). However, foreseeability "alone does not justify the imposition of a duty." *Kiriakos*, 448 Md. at 486. Courts should "resist[] the establishment of duties of care to indeterminate classes of people." *Pharmacia & Upjohn Co.*, 388 Md. at 420.

Relevant here, "it is undisputed that a school has a duty 'to exercise reasonable care to protect a pupil from harm.'" *Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 314–15 (2022) (quoting *Lunsford v. Bd. of Ed. of Prince George's County*, 280 Md. 665, 676 (1977)); *see Eisel v. Bd. of Educ. of Montgomery County*, 324 Md. 376, 384 (1991) ("[A] school is under a special duty to exercise reasonable care to protect a pupil from harm." (quoting *Segerman v. Jones*, 256 Md. 109, 123–24 (1969)).

Similarly at issue, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Blondell v. Littlepage*, 413 Md. 96, 120–21 (2010) (quoting *Jacques*, 307 Md. at 533–35); *see Wilmington Trust Co. v. Clark*, 289 Md. 313, 328–329 (1981) ("While a tort action in favor of a contracting party can be founded upon a duty arising out of the contractual relationship, . . . the duty giving rise to the tort cause of action must be independent of the

contractual obligation . . . . Mere failure to perform a contractual duty, without more, is not an actionable tort."). Still, "[w]here a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of the circumstances surrounding or attending the transaction, the breach of such duty is a tort and the injured party may have his remedy by an action on the case." *Jacques*, 307 Md. at 534 (citation omitted). "[T]he duty giving rise to a tort action must have some independent basis." *Mesmer v. Maryland Auto. Ins. Fund*, 353 Md. 241, 253 (1999). While "[t]here is no single principle or simple test for determining when a defendant's breach of a contract will also breach an independent duty and give rise to a tort action," where a defendant has "proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has undertaken it in violation of the appropriate standard of care, . . . the plaintiff may, in some circumstances, maintain a tort action." *Id.* at 254. A negligence claim may arise from a party's failure to perform a duty which would not have existed "but for" the contractual relationship, even if both are not parties to the contract. *Addi v. Corvias Mgmt.-Army, LLC*, No. CV ELH-19-3253, 2020 WL 5076170, at *26 (D. Md. Aug. 27, 2020) (quoting *New Summit Associates, Ltd. P'Ship v. Nistle*, 73 Md. App. 351, 366 (1987) (citations omitted)).

Based on the foregoing authority, and considering Plaintiff's allegations, the court previously concluded that Plaintiff had pled sufficient facts to allege SOM and MESA owed Plaintiff a legally cognizable duty. SOM and MESA now argue the court's holding was in error because Plaintiff was not herself a party to the underling contract at issue and did not have a "pre-existing independent relationship" with SOM and MESA. (ECF No. 62-1 at pp. 8–9.) SOM and MESA contend that, even assuming SOM and MESA's alleged contractual obligations are enforceable by Plaintiff, the action sounds in contract, not tort.

Specifically, SOM and MESA attempt to distinguish the caselaw referenced by the court in its prior opinion to demonstrate that Plaintiff can only assert a plausible claim where she as the "aggrieved plaintiff was a party to the contract that gave rise to the duty and had a pre-existing, independent relationship with the defendant." (ECF No. 62-1 at p. 9.) The court is not persuaded to read such a narrow requirement at this stage of litigation. Such a restrictive reading is not advanced in the caselaw this court cited. For example, in *New Summit Associates Ltd. Partnership v. Nistle*, the Appellate Court of Maryland held:

> In order for a tort to arise out of a contract, both parties to the tort action need not be parties to the contract. *R.E. Linder Steel Erection Co., Inc. v. Wedemeyer, Cernik, Corrubia, Inc.,* 585 F.Supp. 1530, 1533 (D.Md.1984) *citing Knickerbocker Ice Co. v. Gardiner Dairy Co.,* 107 Md. 556, 69 A. 405 (1908). As the agent of the landlord, New Summit, Dreyfuss was liable to the appellee for its failure to warn her of the latent defect in her leasehold only because it failed to perform a duty which was created by the contractual relationship established by the lease. This duty would not have existed "but for" the lease. Her negligence claim against Dreyfuss therefore arose out of a contract.

73 Md. App. 351, 365–66 (1987).

In so opining, the court did not state that an aggrieved person must be a party to the contract in order for a tort to arise therefrom; nor did it emphasize the necessity of a preexisting relationship. Instead, the court's analysis turned on a duty that would not have existed but for the contract, and the liability of New Summit (a party not subject to the contract) as an agent of the landlord (a party of the contract). Here, Plaintiff similarly alleges a duty by virtue of the Covenant through which, Plaintiff alleges, SOM and MESA agreed to contractual obligations that carried with them a duty to protect Plaintiff from the alleged abuse she experienced. Such pleadings are sufficient to state a claim.

Further casting doubt on SOM and MESA's narrow reading is *R.E. Linder Steel Erection Co. v. Wedemeyer, Cernik, Corrubia, Inc.*—the decision cited by *New Summit* for the challenged principle here. Notably, *R.E. Linder Steel Erection* involved the very circumstance SOM and MESA challenge as insufficient: plaintiffs not parties to a contract asserting a tort arising from that contract. *R.E. Linder Steel Erection Co. v. Wedemeyer, Cernik, Corrubia, Inc.*, 585 F. Supp. 1530, 1533 (D. Md. 1984) (recognizing that "[i]n order for a tort to arise out of a contract. . . , both parties to the tort action need not be parties to the contract" (citing cases)). Though not dispositive, the court's analysis similarly does not appear to address any sort of relationship between the parties.

SOM and MESA's restrictive reading of the caselaw is not persuasive at the present stage of litigation, especially in view of the caselaw suggesting such a restrictive reading is wrongheaded. The court does not find any error in its previous ruling on this issue. Plaintiff's pleading alleges that, by their contractual agreement, Mercy High School grants SOM and MESA reserved governance powers and control over its BOT, requiring MESA's consent before the BOT "is authorized to take its most critical and basic functions," and that this authority carries with it MESA's responsibility to ensure the BOT fulfills its fiduciary duties regarding enforcement and establishment of its policies and programs. (ECF No. 57 ¶¶ 22–23.) Plaintiff further alleges:

> 240. Prior to SOM's formation of MESA, SOM was contractually responsible for ensuring Mercy High School fulfilled SOM's mission of providing students with a Mercy Education.
>
> 241. After SOM's formation of MESA, both SOM and MESA were contractually responsible for ensuring Mercy High School fulfilled SOM's mission of providing students with a Mercy Education.
>
> 242. In agreeing to be responsible for providing Mercy High School students with a Mercy Education, SOM, and then SOM through and with MESA, were contractually obligated to ensure that Mercy High School provided a Mercy Education that included its Critical Concern of Nonviolence, specifically preventing violence and abuse of students through the implementation of a comprehensive policy

12

> that is effective to prevent, recognize, and report sexual abuse.
>
> 243. By virtue of SOM's contractual agreement, severally and then jointly with MESA, to ensure the policies and programs of a Mercy Education that sponsored schools such as Mercy High School were mandated to provide students, SOM, and then SOM through and with MESA, voluntarily accepted the special duty to exercise reasonable care to protect Mercy High School student, Jane Doe, a vulnerable minor, from harm.

*Id.* ¶¶ 240–43.

Accepting such facts as true, as the court previously stated, Plaintiff's allegations are far from conclusory. She identifies the source of the alleged duties SOM and MESA Defendants owed Plaintiff (the Covenant) and explains why and how harm to her was foreseeable should they to fail to fulfill their duties. *See Addi*, 2020 WL 5076170, at *26, *supra*. Plaintiff has thus pled sufficient facts to allege that SOM and MESA Defendants owed Plaintiff a legally cognizable duty.

### C. Breach of Fiduciary Duty Claim against SOM and MESA

SOM and MESA similarly argue that dismissal of Plaintiff's claim for breach of fiduciary duty is warranted because she does not allege a plausible fiduciary relationship with SOM and MESA. (ECF No. 62-1 at p. 11.) Because Plaintiff is not a party to the Covenant, SOM and MESA contend, they cannot owe her a fiduciary duty. *Id.*

The court again restates the law as discussed in its prior opinion. "[A] fiduciary duty is, in general, a duty to act for the benefit of another on matters within the scope of the parties' relationship." *Plank v. Cherneski*, 469 Md. 548, 601 (2020) (citing Restatement (Third) of Torts: Liab. For Econ. Harm § 16 cmt. a (Am. Law Inst. 2020)). "To establish a breach of fiduciary duty as an independent cause of action, a plaintiff must show: '(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'" *Plank*, 469 Md. at 599 (citing *Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 (D.

Md. 2000)). "[F]iduciary relationships can be created by common law, by statute, or by contract, and can have different characteristics." *Id.* at 598. *See Gandy v. Howard Cnty. Bd. of Educ.*, No. CV GLR-20-3436, 2021 WL 3911892, at *5 n.4 (D. Md. Sept. 1, 2021) (same) (quoting *Froelich*, 96 F. Supp. 2d at 526). A court considers the "nature of the fiduciary relationship" on a case-by-case basis. *Plank*, 469 Md. at 599. "Well-known examples of habitual or categorical fiduciary relationships include those between trustees and beneficiaries, agents and principals, directors and corporations, lawyers and clients, and guardians and wards, as well as the relationship among partners." *Id.* at 598 (citations omitted).

"[A] fiduciary relationship will have 'general responsibilities that are common to all settings[,]'" and "specific obligations that vary from one circumstance to the next." *Id.* at 601. "Normally, the determination of whether a fiduciary relationship exists between two individuals is a question of fact." *McElwee v. Williams*, No. 1194, Sept. term, 2019, 2020 WL 6748799, at *3 (Md. Ct. Spec. App. Nov. 17, 2020) (citing *Brass Metal Products, Inc. v. E-J Enters., Inc.*, 189 Md. App. 310, 355 (2009)). "Once a fiduciary relationship is established, there is 'a duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters within the scope of the relation.'" *Id.* (citing *Lasater v. Guttman*, 194 Md. App. 431, 456 (2010)). Stemming from the *in loco parentis* doctrine, "a school is under a special duty to exercise reasonable care to protect a pupil from harm." *Eisel v. Bd. of Educ. of Montgomery Cnty.*, 324 Md. 376, 384 (1991) (quoting *Lunsford v. Board of Educ.,* 280 Md. 665, 676 (1977) (footnote omitted)); *see also Gambrill v. Bd. of Educ. of Dorchester Cnty.*, 481 Md. 274, 314 (2022) ("[I]t is undisputed that a school has a duty "to exercise reasonable care to protect a pupil from harm."); *Loveless v. Estevez*, No. 01985, Sept.term,2017, 2019 WL 4187465, at *6 (Md. Ct. Spec. App. Sept. 3, 2019) ("The Court of Appeals has recognized that a school has such a duty: specifically, 'a special duty to

14

exercise reasonable care to protect a pupil from harm.'"); *Collins v. Bd. of Ed. of Kent Cnty.*, 48 Md. App. 213, 218 (1981) (noting "the common law duty that school authorities have, as the temporary custodians of children, to exercise reasonable care for their protection").

Relevant here, where a plaintiff successfully states a negligence claim, this court has repeatedly held that the plaintiff's breach of fiduciary duty claim may proceed at the 12(b)(6) stage. *Heward v. Bd. of Educ. of Anne Arundel Cnty.*, No. 1:23-CV-00195-ELH, 2023 WL 6381498, at *61 (D. Md. Sept. 29, 2023); *Doe #1 v. Bd. of Educ. of Somerset Cnty.*, No. CV RDB-22-1491, 2023 WL 375189, at *6 (D. Md. Jan. 24, 2023); *Gandy v. Howard Cnty. Bd. of Educ.*, No. CV GLR-20-3436, 2021 WL 3911892, at *5 n.4 (D. Md. Sept. 1, 2021).

SOM and MESA's argument, here again, is based on a more restrictive reading of the law than the court finds appropriate. They ask the court to read into the law a requirement that a contract can only give rise to a fiduciary relationship between the parties in privity under the contract, relying on *Latty v. St. Joseph's Society of Sacred Heart, Inc.*, 198 Md. App. 254, 265 (2011), *abrogated by Plank v. Cherneski*, 469 Md. 548 (2020); however, this aspect of *Latty* is not particularly persuasive because the analysis does not concern allegations of a fiduciary duty created by contract, as is at issue here.[6]

In all, while SOM and MESA's argument may raise serious questions, if not doubts, about whether Plaintiff will prevail in demonstrating the existence of a fiduciary relationship between she and SOM and MESA, multiple factors militate against dismissal at this stage.

First, Plaintiff's allegations of a fiduciary duty are far from conclusory, asserting:

---

[6] Moreover, while certainly not dispositive or its holding, the *Latty* court's analysis appears to have implicitly acknowledged the possible existence of a fiduciary duty (rooted in a contract) to a plaintiff who was not a party to the contract based on the plaintiff's relationship to a contracting party. In recognizing that there was no alleged contract upon which to find a fiduciary duty, the *Latty* court considered whether the complaint "allege[d] that there was any contract between appellants" and, either, the defendant or the non-party priest whose alleged conduct was at issue in the litigation. *Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254, 265 (2011), *abrogated by Plank v. Cherneski*, 469 Md. 548 (2020).

15

23. By accepting these plenary oversight responsibilities of a school's board, MESA, on behalf of SOM, is also responsible to ensure that the board fulfills its fiduciary duties to set the direction of the school and establish its policies and programs to provide students and the school's community with a Mercy Education (Exhibit No. 1, Covenant).

24. Among other things, a Mercy Education requires a sponsored school to incorporate the Five Critical Concerns of SOM in its curriculum and education and community involvement of parent groups, faculty/staff, board, constituents, etc. . . .

25. One Critical Concern is Nonviolence and preventing violence and abuse of women and children, a policy that by definition is also for the benefit of Mercy High School students all of whom are women and children.

26. Consequently, under the Covenant SOM and MESA are contractually responsible for the policies and programs of Mercy High School and ensuring its policy to prevent violence and abuse against its students is comprehensive, implemented, and effective to recognize, prevent and report sexual abuse.

.       .       .

247. At all relevant times, Jane Doe was a minor and vulnerable youth entrusted to the care of Mercy High School, an SOM sponsored school.

248. As the entities contractually responsible for oversight and control of BOT and the policies to ensure Mercy High School, a Maryland educational institution, provided students with a Mercy Education, Defendants SOM and MESA owed Jane Doe, a student and minor of their sponsored school, a fiduciary and special duty of trust and confidence to protect her from harm, ensure her safety and well-being, and act in her best interest.

249. The fiduciary and special duty of trust and confidence that SOM and MESA owed to Jane Doe included their obligation to provide her with a Mercy Education that included SOM's Critical Concern of Nonviolence and preventing violence and abuse of students through the implementation of a comprehensive policy to prevent, recognize, and report sexual abuse.

(ECF No. 57 ¶¶ 23–26, 247–49.)  These allegations, like those in support of Plaintiff's negligence claim, offer specific allegations about the origin of the alleged fiduciary relationship and the resulting duty at issue.

Second, as the court discussed above, and in its prior opinion, this court has repeatedly permitted a plaintiff's breach of fiduciary duty claim to proceed at the Rule 12(b)(6) stage where she has successfully stated a claim of negligence.  *See, e.g., Heward*, 2023 WL 6381498, at *61, *supra*; *Doe #1*, 2023 WL 375189, at *6, *supra*; *Gandy*, 2021 WL 3911892, at *5 n.4, *supra*.  This court is thus also persuaded to permit Plaintiff's breach of fiduciary duty claim to proceed based on its satisfaction that her negligence claim is well-stated.

Finally, Plaintiff here alleges significant overlap with and acceptance of responsibility for Mercy High School students by way of contractual obligations.  Upon the allegations at issue in this case, the determination of whether a fiduciary relationship exists—generally a question of fact—does not lend itself well to resolution on a pre-discovery Rule 12(b)(6) motion.  *See Brass Metal Prods.*, 189 Md. App. at 358, *supra*.  To be clear, the court makes no finding of whether a fiduciary relationship exists between SOM and MESA and Plaintiff; instead, the court concludes that Plaintiff asserts sufficient facts to allege a plausible fiduciary relationship based on the Covenant, the authority and obligations set forth therein, and the nature of the relationship between a minor child and her school.

Further still, SOM and MESA argue that the court should dismiss Plaintiff's claim because "each jurisdiction outside of Maryland" presented with a similar claim on a motion to dismiss has granted the motion. (ECF No. 62-1 at pp. 13–14.)  While SOM and MESA's broad assertion seems tenuous at best, *see, e.g.*, *Doe v. Norwich Roman Cath. Diocesan Corp.*, 309 F. Supp. 2d 247, 249 (D. Conn. 2004); *Connolly v. Roman Cath. Archbishop of Bos.*, No. 1782CV1126, 2019 WL

2402290, at *7 (Mass. Super. May 17, 2019), their cursory argument is otherwise not persuasive. SOM and MESA reference the cited cases but offer no argument about why such cases would be compelling here—*e.g.*, that the applicable law there is comparable to the law here or that the pleadings there are deficient in the same way that SOM and MESA assert Plaintiff's pleadings are here. The court declines to undertake such a task where the movants have opted not to do so. Conclusory assertion of cases to suggest this court's holding would be an outlier is insufficient at this early stage of litigation to support dismissal.

## IV. CONCLUSION

For the reasons set forth herein, by separate order, the SOM and MESA's Motion (ECF No. 62) will be denied.

July 3, 2025                                                            /S/

                                                            _____
                                                            Julie R. Rubin
                                                            United States District Judge