**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JANE DOE,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 1:23-1184-JRR** |
| **MERCY HIGH SCHOOL, INC., *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

* * *

**MEMORANDUM OPINION**

Before the Court is a Motion for Physical Examination Pursuant to Federal Rule of Civil Procedure 35 (ECF 89) filed by Defendants Mercy High School, Inc.; Board of Trustees, Mercy High School, Inc.; and Mercy High School Asset Management, LLC. The Motion seeks an order compelling Plaintiff Jane Doe to submit to an independent medical examination "concerning the injuries and conditions Plaintiff has placed in controversy," which include "severe psychological, emotional, and physical injuries" resulting from sexual abuse. (ECF 89 at ¶¶ 2, 4.) Plaintiff submitted a memorandum in opposition, and Defendants filed a reply. (ECFs 100, 108.) I have reviewed the briefing and find no hearing is necessary.[1] Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the Motion is GRANTED in part, with the examination restricted as described below, and otherwise DENIED.

[1] On August 5, 2026, Judge Rubin referred this matter to the undersigned for all discovery and related scheduling. (ECF 82.)

## I. BACKGROUND

This case concerns alleged failures to protect Plaintiff from sexual abuse by an indoor track coach, Ernest Jackson IV, at Mercy High School in Baltimore, Maryland. Judge Rubin's June 24, 2024 memorandum opinion provides an extensive discussion of the factual allegations.[2] (ECF 42.) For the purposes of this Motion, the Court highlights a handful of facts and allegations central to the parties' arguments. Plaintiff began attending Mercy High School as a freshman in 2016, having recently immigrated from Honduras. (*Id.* at 1.) The previous year, Mercy hired Jackson as an assistant indoor track coach. (*Id.* at 3.) The allegations emphasize that this occurred after Jackson was convicted of several crimes including a first-degree assault, which, according to Plaintiffs, should have disqualified him from employment based on state law and school policy. (*Id.* at 3-5.) Plaintiff alleges that Jackson sexually abused her repeatedly beginning in her freshman year, shortly after she tried out for the indoor track team, and renewing the abuse during her junior year. (*Id.* at 6.) Plaintiff and others reported Jackson's abusive conduct (towards her and other students) to school officials. (*Id.* at 6-8.) A criminal investigation launched by the Baltimore Police Department resulted in criminal charges against Jackson; in 2019, he pleaded guilty to sex offense and assault charges based on his abuse of Plaintiff. (*Id.* at 9.) Throughout her allegations, Plaintiff describes feelings of fear, anxiety, humiliation, and betrayal; enduring bullying; quitting the track team; and engaging in self-harm and drug abuse as a result of how school officials handled the

[2] Plaintiff filed a Second Amended Complaint after Judge Rubin's June 2024 memorandum opinion. (ECF 57.) The undersigned discerns no meaningful change to any of the factual allegations relevant to this discovery dispute; the amendment appears to have addressed certain pleading deficiencies with respect to standalone counts against two defendants. (*See* ECF 55 at 7-8 (Mem. Op. granting motion for leave to amend)).

reports and investigation, including confronting Plaintiff about the abuse in front of other students and being dishonest in a manner that left Plaintiff (and other students) unprotected. (*Id.* at 7-8.) According to Plaintiff, "Defendants' failure to fulfill their duties to Plaintiff caused her 'four years of trauma, first from the abuse and then from Defendants' response and retaliation, causing [her] emotional and psychological injuries that have and will negatively impact her for life.'" (*Id.* at 8-9 (quoting Am. Compl., ECF 33, at ¶ 150).)

Discovery is ongoing in this case. The current discovery deadline is January 22, 2027, a date the Court set following a somewhat contested motion to extend the discovery deadline.[3] (ECF 86.) Plaintiff's deadline for providing expert disclosures was June 15, 2026. (ECF 80.) Plaintiff produced a report, dated June 15, 2026, from her retained expert Lama Bazzi, M.D., a physician board certified in psychiatry by the American Board of Psychiatry and Neurology and in forensic psychiatry by the American Board of Forensic Psychiatry. (*See* ECF 100-1 at ¶ 1 (Affidavit of Lama Bazzi, M.D.); ECF 108-1 (excerpts from Dr. Bazzi's June 15, 2026 report).) Dr. Bazzi's report considered, among other things, an interview conducted with Plaintiff on May 11, 2026, Plaintiff's victim statement from November 2018, police interviews of other witnesses in late 2018, and Plaintiff's medical records. (ECF 108-1 at 1.) The latest scheduling order set Defendants' Rule 26(a)(2) disclosure deadline on October 16, 2026. (ECF 86.) A stipulated protective order

[3] The Court uses this phrasing because Plaintiff did not oppose the extension insofar as Defendants sought additional time to perform expert-related work that was halted due to certain defense counsel's unexpected need for a medical procedure. (*See* ECF 84 at 9.) However, Plaintiff opposed the use of such an extension for the purpose of pursuing a Rule 35 examination. (*Id.*) In a short order that did not address the merits of the yet-to-be filed Rule 35 issue, the Court granted the extension and noted that further extensions of the discovery deadline would be disfavored. (ECF 86.)

governs production and retention of certain discovery based on the particularly sensitive and personal nature of medical and other information at the heart of Plaintiff's claims. (ECF 88.)

On September 4, 2026, Defendants filed the pending Motion, seeking an independent medical examination of Plaintiff by Dr. Lee Wachtel, a licensed psychiatrist retained by Defendants. (ECF 89 at ¶¶ 2, 3.) Defendants assert there exists good cause for such an examination exploring the "nature and causation of the" psychological, emotional, and physical injuries following Jackson's sexual abuse of her—injuries that Plaintiff placed "directly and affirmatively in controversy in this action." (*Id.* at ¶ 3, 8-9.) Plaintiff responded timely ten days later,[4] arguing that good cause for the examination is lacking or, in the alternative, that the examination not involve inquiry into certain subjects—any history of sexual abuse during Plaintiff's childhood, Jackson's abuse of Plaintiff, or Plaintiff's sexual history at any other time. (*See generally* ECF 100.) Both parties reference Dr. Bazzi's report and subsequent interactions with Plaintiff. (*See* ECF 100 at 12-13; ECF 100-1; ECF 103 at 7-9.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 35(a)(1) authorizes courts to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Such an order (1) may issue

[4] Filing the Motion shortly before 3:00 p.m. on the Friday before Labor Day weekend, Defendants filed a contemporaneous motion to shorten Plaintiff's time to respond, seeking an order requiring Plaintiff's response by the next business day, Tuesday, September 8. (ECF 91.) The Court declined to require such a short turnaround on a significant issue (of which Defendants were aware based on arguments regarding the motion to extend the discovery schedule) and instead ordered Plaintiff to respond by September 14. (ECF 99.)

only upon a motion providing good cause and (2) "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2).

"Like all discovery rules, Rule 35 is 'to be accorded a broad and liberal treatment . . . [in order] to effectuate their purpose that civil trials in the federal courts no longer need to be carried on in the dark.'" *Rich v. Diana Consulting Servs. LLC*, No. SAG-21-1670, 2022 WL 1289663, at *3 (D. Md. Apr. 28, 2022) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964)) (alterations in original). Considering the potential for substantial and serious invasions of privacy, Rule 35 imposes limitations not always applicable to other discovery procedures. *Id.* The two critical prerequisites to a Rule 35 order are the movant demonstrating that (1) the examinee's mental or physical condition "is genuinely in controversy" in the litigation and (2) good cause exists for the requested examination. *Id.*; *Levy v. Green*, No. TDC-18-1291, 2024 WL 3090367, at *4 (D. Md. June 21, 2024); *see also Schlagenhauf*, 379 U.S. at 118 (describing the two requirements as "not a mere formality, but [] a plainly expressed limitation"). "At bottom, analysis of both aims . . . balance[s] the need for an examination against the burdens it imposes." *Coomes v. Moran*, No. ELH-22-2639, 2026 WL 884926, at *3 (quoting *Nicholson v. Balt. Police Dep't*, No. DKC-20-3146, 2022 WL 1104575, at *2 (D. Md. Apr. 13, 2022)) (alterations in original). These two elements address different considerations yet are "necessarily related." *Schlagenhauf*, 379 U.S. at 118-19; *see also Shipley v. Disney*, No. SAG-21-3173, 2024 WL 128778, at *1 (D. Md. Jan. 11, 2024).

The first requirement, that the physical or mental condition be "in controversy," "may be satisfied when a plaintiff alleges 'a specific mental or psychiatric injury or disorder[.]" *Rich*, 2022 WL 1289663, at *4 (quoting *Ricks v. Abbott Labs.*, 198 F.R.D.

647, 649 (D. Md. 2001)). Courts put "significant weight" on which party placed the alleged condition(s) in controversy. *Coomes*, 2026 WL 884926, at *4. In cases asserting a physical or mental injury, the allegations alone can be enough to put the asserted injuries in genuine controversy. *Schlagenhauf*, 379 U.S. at 119.

The good cause examination tends to draw more scrutiny, however. "[B]y adding the words 'good cause,' the Rules indicate that there must be greater showing of need under Rule[] 35 than under the other discovery rules." *Schlagenhauf*, 379 U.S. at 118. This assessment "is intensely fact-specific" and turns on the circumstances of each case. *Rich*, 2022 WL 1289663, at *4 (quoting 8B Charles A. Wright, *et al.*, Federal Practice and Procedure § 2234.1 (3d ed.)); and then citing *Storms v. Lowe's Home Ctrs., Inc.*, 211 F.R.D. 296, 298 (W.D. Va. 2002)); *see also Schlagenhauf*, 379 U.S. at 121 ("Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule."). Examples of good cause include situations where a party requires an examination to defend against a claim and "'the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries[.]'" *Rich*, 2022 WL 1289663, at *4 (quoting *Jones v. Campbell Univ., Inc.*, No. 5:20-cv-29-BO, 2020 WL 4451173, at *4 (E.D.N.C. Aug. 3, 2020)).

"The fact intensiveness of these inquiries means Rule 35 eludes simple encapsulation." *Shipley*, 2024 WL 128778, at *3. However, courts often consider the following non-exhaustive list of circumstances when addressing Rule 35 motions, finding the presence of one or more justifies a medical examination:

> (1) plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) plaintiff has alleged a specific mental or psychiatric injury or disorder; (3) plaintiff has claimed unusually severe emotional distress; (4) plaintiff has offered expert testimony in support of her claim for emotional distress damages; and (5) plaintiff

> concedes that her mental condition is "in controversy" within the meaning of Rule 35(a).

*Ricks*, 198 F.R.D. at 648-49 (quoting *Fox v. Gates Corp.*, 179 F.R.D. 303, 307 (Colo. 1998)) (brackets omitted); *see also Coomes*, 2026 WL 884926, at *3 (noting that "courts have consistently held that a plaintiff's mental condition is in controversy" when at least one of these is present); *Shipley*, 2024 WL 128778, at *3 (identifying these as "circumstances where ordering a Rule 35 examination is generally appropriate").

## III. ANALYSIS

The parties dispute, vigorously, whether good cause exists for Defendants' expert to conduct an examination and, if so, whether Plaintiff's proposed limitations on topics and location are appropriate. In opposition to Defendants' proposal, Plaintiffs emphasize (1) the evidentiary restrictions imposed by Federal Rule of Evidence 412, (2) that Defendants' Motion omitted relevant specific information, including the qualifications of their proposed examiner as well as the scope of the examination, (3) their concerns that Defendants will use the examination to dispute whether Plaintiff was sexually abused by Jackson (who, it bears repeating, pleaded guilty to doing so),[5] (4) Dr. Bazzi's opinion that subjecting Plaintiff to an examination would exacerbate her injuries and cause further deterioration of her conditions, and (5) that Defendants' proposed location is a law firm focused on insurance defense. Defendants contend that Plaintiffs' arguments are not

[5] While not ruling on the merits of this question, the Court recognizes that one of Plaintiff's exhibits is the transcript from Jackson's December 16, 2019, guilty plea to a fourth-degree sexual offense and second-degree assault. (ECF 100-3.) While Defendants question Plaintiff's credibility and insist that the guilty plea is neither admissible in this case nor an admission by Defendants (*see* ECF 103 at 4-7), there appears to be no dispute that the incident at issue in this conviction involved Plaintiff. Even if there were such a dispute, it would not alter the Court's analysis in any way.

relevant to the Rule 35 analysis or are otherwise insufficient to deny the examination going forward.

The Court concludes that Defendants have met both Rule 35 prerequisites. With a single but significant modification, the Court will order the requested examination.

**A. Plaintiff's mental or psychiatric health is in controversy.**

The parties do not dispute that the "in controversy" requirement is satisfied here. Indeed, Plaintiff acknowledges as much on the first page of her response brief. (ECF 100 at 1.) Even without this express acknowledgment, the allegations detail the circumstances giving rise to this case and the ongoing harm caused. (*See* Second Am. Compl. ECF 57, at ¶¶ 148-167.) Based on the claims and defenses in the pleadings, as well as Plaintiff's agreement, four of the five circumstances described in *Ricks* are present. The Court has no doubt that Plaintiff's mental and psychiatric conditions are "genuinely in controversy." As Plaintiff notes, however, this alone is not enough. *See, e.g.*, *Rich*, 2022 WL 1289663, at *5 ("The fact that Plaintiff's mental and physical condition are in controversy does not settle the question of whether there is good cause for the examination requested by Defendant."). Therefore, the Court must consider, carefully, the "good cause" requirement.

**B. Good cause for the requested examination exists, with some limitations.**

As several decisions of this Court acknowledge, the "good cause" requirement demands more of a movant than the "mere relevance" that would otherwise justify discovery. *See, e.g.*, *Coomes*, 2026 WL 884926, at *4; *Shipley*, 2024 WL 128778, at *3. Indeed, the Supreme Court explains that "[t]he specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the

desired [examination is] relevant, for the relevancy standard has already been imposed by Rule 26(b)." *Schlagenhauf*, 379 U.S. at 118. Even with this more demanding requirement, the Court concludes good cause exists here for at least two reasons.

First, the pleadings, arguments, and exhibits (which reflect discovery and anticipated evidence in this case) demonstrate that Defendants require an examination to defend against Plaintiff's claims for severe injuries. *See Shipley*, 2024 WL 128778, at *3 (noting that the allegation of anxiety, depression, and post-traumatic stress disorder, all caused by wrongful incarceration, favored a showing of good cause to conduct a mental health examination). The information gleaned from any examination by Dr. Wachtel "would be relevant to Plaintiff's claims and could prove critical to the defense" against them insofar as Plaintiff seeks damages for severe and debilitating injuries as described by Dr. Bazzi's report and subsequent affidavit. *Rich*, 2022 WL 1289663, at *5. The alleged damages go "beyond the 'garden variety' sort that 'everyone experiences.'" *Nicholson*, 2022 WL 1104575, at *2; Thus, "a professional examination is necessary to explore whether Plaintiff's claimed injuries are exaggerated or caused by a psychological condition because 'the average lay person would have difficulty evaluating the nature, extent, and cause' of these injuries without such an examination." *Rich*, 2022 WL 1289663, at *4 (quoting *Jones*, 2020 WL 4451173, at *4); *see also Shipley*, 2024 WL 128778, at *4 (characterizing claims of "significant" trauma as involving "distinct psychological disorders with identifiable clinical meanings and treatment protocols" and thus were not "straightforward and easy to understand" absent a medical examination).

Defendants intend to explore the alleged injuries through Dr. Wachtel, who is affiliated with Johns Hopkins Kennedy Krieger Institute. Defendants tout Kennedy Kreiger as "a world-renowned institution for dealing with adolescent psychiatry." (ECF

103 at 8.) Meanwhile, Plaintiff questions whether Dr. Wachtel is an appropriate examiner, given her practice as a pediatric psychiatrist, Plaintiff being 24 years old, and the fact that in the nearly three dozen cases where Dr. Wachtel provided expert witness testimony, all but two have involved autistic persons (which does not describe Plaintiff). (ECF 100 at 6.) The Court does not find that Dr. Wachtel is an improper examiner. There appears to be no dispute that she has the licensing and certification to conduct an examination. Her *curriculum vitae*, attached to Defendants' reply brief, confirms her qualification to conduct the proposed examination of Plaintiff. Whether her history or specialty influences whether her opinions are admissible or worth relying upon are questions for the trial judge to address through *Daubert* or other motions or the factfinder at trial. *See Rich*, 2022 WL 1289663, at *6 (citing *McKitis v. Defazio*, 187 F.R.D. 225, 227-28 (D. Md. 1999) for the proposition that "any concerns about [an] expert's opinion following [the] Rule 35 examination can be addressed in a pretrial motion in limine").[6]

The second reason is that Plaintiff intends to prove its case by using expert testimony. In cases involving allegations of unwanted sexual contact or abuse, courts have concluded that a plaintiff's reliance on an expert provides good cause for a defendant's examination even though such examination may encroach upon extremely sensitive and distressing topics and involve sexual assault of minors. *See T.C. on Behalf of S.C. v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, No. 3:17-CV-01098, 2018 WL 3348728, at *11–12 (M.D. Tenn. July 9, 2018) (allegations of sexual assault of minors on school grounds by at least one teacher (as well as other students)); *Starkey v.*

[6] The Court notes that despite her protests about Dr. Wachtel's background and focus, Plaintiff's alternative to denial is to allow Dr. Wachtel to proceed with the examination (albeit with the exclusion of certain topics). This does not strike the Court as indicating that Dr. Wachtel is unqualified to conduct a Rule 35 examination in this case.

*McHugh*, No. 14-CV-02525-PSG, 2015 WL 6438762, at *1 (N.D. Cal. Oct. 23, 2015) (sexual harassment in the workplace); *Does 1-5 v. City of Chicago*, No. 18-cv-3054, 2019 WL 2076260, at *2 (N.D. Ill. May 10, 2019) (same). Mindful that Rule 35 does not permit "routine authorizing of physical and mental examinations," the *T.C.* court noted the "distinction between a plaintiff who seeks treatment for emotional harm and should not be punished for doing so and a plaintiff who elects to be examined by an expert to support her litigation position." 2018 WL 3348728, at *12 (citing *Winstead v. LaFayette Cnty. Bd. of Cnty. Comm'rs*, 315 F.R.D. 612, 616 n.3 (N.D. Fla. 2016)). "In the latter circumstance, '[f]orcing such a plaintiff to submit to a similar examination conducted by a different expert . . . is not punishment, but a leveling of the playing field.'" *Id.* (quoting *Winstead*, 315 F.R.D. at 616 n.3); *see also Duncan v. Upjohn Co.*, 155 F.R.D. 23, 26 (D. Conn. 1994) ("The plaintiff intends to prove his claim at trial through the testimony of his own expert witness, which also constitutes good cause for permitting the defendant to conduct its own psychiatric examination of the plaintiff.").

Judges of this Court have found good cause to permit examinations of serious mental health conditions regardless of whether a plaintiff offered expert testimony. Earlier this month, Judge Coulson explained that even without the plaintiff having designated an expert, the defendant "should not be 'required to rely solely on the Plaintiff's witnesses['] assessment of her mental condition.'" *De Kouadio v. Nteligen, LLC*, No. JRR-26-451, 2026 WL 2603025, at *3 (D. Md. Sept. 3, 2026) (quoting *Allshouse v. JBL Ltd.*, No. 3:05-cv-403-DRH, 2006 WL 517615, at *2 (S.D. Ill. Mar. 2, 3006)). In *Shipley*, Judge Abelson explained that the defendants were "entitled to have their expert explore [the plaintiff's] alleged conditions, including their nature, extent, and cause(s), regardless of whether Mr. Shipley intends to call an expert at trial on those issues." 2024

WL 128778, at *4 (citing *Rich*, 2022 WL 1289663, at *2)). Both observations are even more persuasive in a case where, like here, a claimant intends to rely on expert testimony in support of her claims.

Plaintiff notes that Defendants have access to Plaintiff's medical records, prior interviews, and Dr. Bazzi's report. (ECF 100 at 11.) To the extent Plaintiff mentions this to suggest that an examination is unnecessary because an expert can rely solely on those records, the Court rejects that argument for the reasons described in the preceding two paragraphs. The Court is mindful that in other circumstances, judges in this District have denied Rule 35 examinations if less intrusive means of obtaining the information were available. *See, e.g.*, *Coomes*, 2026 WL 884926, at *8; *Nicholson*, 2022 WL 1104575, at *3. But in both cases, Judges Hollander and Chasanow, respectively, denied the Rule 35 motions without prejudice to renew after the movant explored the availability and sufficiency of medical records as an adequate substitute for examining the claimant in person. With an eye to the facts in this case, the Court concludes that possession and review of the medical records is not an adequate substitute for exploring the alleged, significant, and ongoing injuries Plaintiff alleges.[7]

[7] The Court does not find that Dr. Bazzi's opinions—contained in the affidavit attached to Plaintiff's briefing—about the potential impact of an examination justify denying the Motion or limiting questioning. The parties do not submit authority where a court decided on the scope of a Rule 35 examination based on the claimant's expert's opinion—formed as part of an opposition to such a motion—that an examination would cause undue harm to the claimant and that any opposing expert need not discuss certain topics. The Court's conclusions are based on the procedural and evidentiary considerations noted in this opinion. To the extent such harms bear on those analyses, the Court has considered them in those contexts. The fact that an expert seeks to limit a competing expert's opportunity to provide a different conclusion carries no weight in the Court's analysis.

**C. Conditions and limitations on the examination.**

The briefs raise several arguments that touch on both good cause and the proper scope even if good cause exists. The Court will address each, with the scope requiring a lengthier discussion than the other parameters.

1. Scope of examination

The parties appear to agree that the examination would not involve written or oral psychological or psychiatric tests or testing, would not involve Plaintiff having to complete forms before, during, or after the examination, and would last approximately three hours.[8] (ECF 100 at 7.) What remains hotly disputed is the extent to which the examination may discuss Plaintiff's sexual history, including abuse as a child and the incidents involving Jackson.

Plaintiff insists that evidentiary limitations in sex offense cases require either denial of the examination or limitation on its scope. (*See* ECF 100 at 3-4.) In civil matters involving alleged sexual misconduct, Federal Rule of Evidence 412 prohibits "evidence offered to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition" unless the probative value of such evidence "substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." The Rule

> was intended to "afford increased protection to alleged victims of sexual misconduct, in either civil or criminal proceedings, to safeguard them against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with the public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact finding process."

[8] Plaintiff describes this agreement in its response, and Defendants' reply does not appear to contest the existence of such agreement.

*Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 181 (D. Md. 1997) (quoting Federal Rule of Evidence 412(c) advisory committee's note to 1994 amendment). In focusing on trial evidence, the Rule does not, on its terms, prohibit *discovery* into such matters that might otherwise be prevented from reaching a jury: "Indeed, the Advisory Committee Notes to the 1994 amendments to Rule 412 make it clear that the focus of the rule is admissibility at trial, not discovery during pretrial proceedings." *Id.*; *see also* Fed. R. Evid. 412(c) advisory committee's note to 1994 amendment (acknowledging that the evidentiary limitations "do not apply to discovery of a victim's past sexual conduct . . . in civil cases," a matter governed by Rule 26).

Even so, following the Advisory Committee's guidance, courts consider protective orders under Federal Rule of Civil Procedure 26(c) "to protect the victim against unwarranted inquiries and to ensure confidentiality." Fed. R. Evid. 412(c) advisory committee's note to 1994 amendment. The Advisory Committee explains that "[c]ourts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." *Id.* For these reasons, courts remain mindful that while discovery is broad in general, "Rule 412 reflects a determination that 'prior sexual activity is of dubious probative value and relevance and is highly embarrassing and prejudicial' and can be 'used to harass the prosecuting victim.'" *T.C.*, 2018 WL 3348728, at *8 (quoting *Bell v. Harrison*, 670 F.2d 656, 658 (6th Cir. 1982)); *see also Herchenroeder*, 171 F.R.D. at 182 ("[I]n determining whether the requested discovery in the present case is appropriate, I must look to both [Federal Rule of Civil Procedure] 26 and [Federal Rule of Evidence]

412."). Like Judge Grimm, I have considered both the rules on discovery as well as on admissible evidence of sexual behavior or history.

Having considered the arguments and authority examining the intersection of these two important considerations, the Court concludes that good cause exists, but a narrowing is appropriate. First, I conclude that inquiry into Plaintiff's sexual history is not justified by the parties' dispute on whether the alleged misconduct (to which Jackson pleaded guilty) occurred and Plaintiff's credibility on that matter. *See T.C.*, 2018 WL 3348728, at *9 ("The logic supporting [defendants'] theory of relevance—that a plaintiff's private sexual history has some bearing on whether unrelated sexual contact was wanted—is hollow, as many courts before this one have found." (citations omitted)); *Starkey*, 2015 WL 6438762, at *1 ("[T]he sexual history of the plaintiff in a harassment case is irrelevant and potentially prejudicial to the factual determination of whether he or she was harassed."). Therefore, the Court finds inappropriate any inquiry requiring Plaintiff to recount the details of the alleged abuse by Jackson in a manner designed to assess whether the abuse occurred instead of what, if any, causally related injuries Plaintiff experiences. Defendants have obtained the details of the abuse by less intrusive means. Dr. Wachtel may consider those other sources in opining on the nature and causation of any injuries (including credibility of the asserted nexus between the alleged conduct and alleged injuries). This examination will not be a vehicle for rehashing those details.[9]

[9] It may be that Plaintiff's explanation of her injuries encourages her to discuss specific facts. Dr. Wachtel should be careful in how any inquiries are phrased so as to be consistent with this opinion.

Plaintiff's "history is, however, relevant to her current emotional condition." *Starkey*, 2015 WL 6438762, at *1. Defendants are "entitled to have a professional expert opine on whether [Plaintiff's] severe emotional distress arose from the events at issue or predated them. Events from [Plaintiff's] entire lifetime may impact [the defense expert's] evaluation of her mental health today." *Id.* It appears from the briefings and the expert of Dr. Bazzi's report that Dr. Bazzi discussed Plaintiff's abuse as a child as well as the effects of Jackson's actions on Plaintiff. To the extent that Dr. Bazzi's report explored other aspects of Plaintiff's sexual history, those would be appropriate topics for the defense expert to explore in assessing the nature and extent of Plaintiff's alleged injuries. *See T.C.*, 2018 WL 3348728, at *12. Dr. Wachtel should not explore areas that were not explored by Dr. Bazzi. If Defendants want to challenge Plaintiff's credibility on the occurrence of the assault, they may do so through other means, including the statements produced in discovery; the Rule 35 examination is for assessing the nature and causation of the alleged injuries. *See id.* But, in general, Dr. Wachtel may assess Plaintiff's claims of "severe psychological, emotional, and physical injuries" alleged in the Second Amended Complaint. *See Shipley*, 2024 WL 128778, at *4 (limiting scope of examination to assessment of alleged post-traumatic stress disorder and emotional distress); *Rich*, 2022 WL 1289663, at *6 ("The scope of the examination will be restricted to testing or assessing whether Plaintiff's claimed injuries or complaints are exaggerated, amplified, or owed to malingering or a psychological condition, such as somatization disorder."). Consistent with the Advisory Committee's directive, any examination material (including notes and reports generated as a result) shall be treated as confidential consistent with the stipulated protective order in this case.

In authorizing this discovery, the Court takes no position on how Federal Rule of Evidence 412 impacts the admissibility or exclusion of any facts or opinions that Dr. Wachtel might explore or offer. The trial judge will consider such matters at the appropriate time and upon an appropriate motion. *Rich*, 2022 WL 1289663, at *6 (*citing McKitis*, 187 F.R.D. at 227-28).

2. Other parameters and considerations.

Plaintiffs raise several other issues that can be addressed quickly. First, Plaintiffs object to Defendants' proposed location—1301 York Road, Suite 402, Lutherville, MD—which may be an office of an insurance defense law firm unconnected with this case. There being no connection to either party, the Court finds no reason to declare this location unsuitable for the proposed examination, which appears to be limited to a clinical interview and non-invasive inquiry or examination as the examiner deems necessary.

Second, the parties appear to contemplate proceeding on Friday the 18th at 10:00 a.m. at whatever location the Court deems appropriate. Having addressed location, the Court will direct the examination proceed on the contemplated date at time. Mindful that this resolution is issuing the day before (and one day after briefing concluded), if there is no agreement on this point, the parties should confer promptly and arrange for a mutually agreeable date and time. The Court notes that, according to exhibits attached to the briefing, the parties contemplated other dates this month. The Court expects this examination to occur by the end of this month, to permit sufficient time for Defendants to meet their Rule 26(a)(2) disclosure deadline without seeking additional extensions.

Third, Plaintiff's brief indicates the parties' agreement that the examination would last "about three hours." (ECF 100 at 7.) Having an opportunity to respond to this assertion, Defendants do not suggest that a different duration is appropriate. "In general,

courts do not limit the duration of a Rule 35 psychological examination." *Levy v. Howard Cnty., Md.*, No. RDB-24-3580, 2025 WL 3233762, at *3 (D. Md. Nov. 19, 2025). Even so, based on the purpose of the examination, the Court finds such agreement reasonable.

Last, there appears to be no request for any third parties to attend the examination or that the examination be recorded. Even if there were, the Court would not permit either on this record. *See, e.g.*, *Levy*, 2025 WL 3223762, at *2-3.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion for Physical Examination Pursuant to Federal Rule of Civil Procedure 35 (ECF 89) GRANTED subject to the conditions and limitations in scope described herein and otherwise DENIED. A separate implementing order shall issue.

Date: September 17, 2026

/s/
Charles D. Austin
United States Magistrate Judge